IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL MCCARLEY,                                3:11-CV-00441-BR

             Plaintiff,                          OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

             Defendant.


STEVEN MUNSON
308 S.W. 1st Avenue, Suite 200
Portland, OR 97204
(503) 200-2718

        Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

1  - OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**KEITH SIMONSON**
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
1301 Young Street, Suite A-702
Dallas, TX 75202
(214) 767-3459

          Attorneys for Defendant


**BROWN, Judge.**

    Plaintiff Michael McCarley seeks judicial review of the
Commissioner of Social Security's final decision denying his
application for Disability Insurance Benefits (DIB) pursuant to
Title II of the Social Security Act, 42 U.S.C. §§ 401-34.

    This Court has jurisdiction to review the Commissioner's
final decision pursuant to 42 U.S.C. § 405(g).

    For the reasons that follow, the Court **REVERSES** the decision
of the Commissioner and **REMANDS** this matter to the Commissioner
pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate
calculation and payment of benefits.


## ADMINISTRATIVE HISTORY

    Plaintiff applied for DIB on August 18, 2006, alleging he
has been disabled since May 15, 2006, as a result of diabetes, an
emotional disorder, depression, and post-traumatic stress
disorder (PTSD).  Tr. 120-22, 144.  Plaintiff's application was

denied initially on October 20, 2006, and on reconsideration on March 23, 2007.  Tr. 93, 99.

On May 27, 2009, the ALJ held a hearing on Plaintiff's DIB application.  Plaintiff and a vocational expert (VE) testified at the hearing.  Tr. 29-73.

On June 25, 2009, the ALJ issued a "partially favorable" decision in which, preliminarily, he reopened Plaintiff's prior July 21, 2005, application for DIB.  The ALJ noted Plaintiff had filed the pending application within 12 months of the July 2005 application, and, therefore, the prior decision could be reopened. Tr. 14.[1]  The ALJ found Plaintiff was disabled from May 15, 2006, until July 1, 2008, but his disability ended on July 2, 2008, because of his medical improvement.  *Id.*

On February 8, 2011, the Appeals Council denied Plaintiff's request for review.  Tr. 1-3.  Accordingly, the ALJ's November 29, 2009, decision was the final decision of the Commissioner.  Tr. 13-15.

On April 8, 2011, Plaintiff filed a Complaint seeking this Court's review of the Commissioner's final decision that Plaintiff is not entitled to DIB after July 1, 2008.

---

[1] Social Security Regulations provide a prior decision may be reopened for any reason within twelve months of the date of the initial determination notice.  20 C.F.R. §§ 416.1488 and 416.1489.

3  - OPINION AND ORDER

## BACKGROUND

As of the May 27, 2009, hearing before the ALJ, Plaintiff was 62 years old.  Tr. 37.  He completed two years of college and attended truck-driving school.  Tr. 34.  He worked as a tank-and-machine operator for a wax company from 1984 to 1992 and as a long-haul truck driver from 1995 to 2002.  Tr. 145.

Plaintiff lost his motivation to work when his son murdered a girlfriend and committed suicide in front of Plaintiff's grandchildren.  Plaintiff thereafter began making mistakes on the job, which resulted in multiple minor fender benders.  Tr. 39. He was fired from his last job in 2002.

Plaintiff is a Vietnam-era veteran.  In 2006 he began a 15-month Veterans Administration (VA) inpatient mental-health treatment program to address socialization difficulties.  Tr. 41. After he left the VA program in 2008, he lived with his sister for two or three years until he moved out as a result of differences of opinion over sharing the housework.  Tr. 42.

During his time in the VA program and while living with his sister, Plaintiff continued having difficulty with personal-care and hygiene issues.  Tr. 42-43.  He spent a lot of time sleeping and playing computer games.  Tr. 43.

At the time of the hearing, Plaintiff was living in a low-income Housing Authority apartment in Portland.  Tr. 45.  He does not make any effort to do household chores or to maintain his

4  - OPINION AND ORDER

personal hygiene.  Tr. 46.  He does, however, continue to seek mental-health treatment and attends classes offered by the VA. Tr. 48.

Although he wants to work, Plaintiff is unsure whether he is able to hold down a job because of his inability to focus on tasks.  Tr. 49.  He is depressed on a daily basis and focuses on his son and the difficulties that arose because of his son's actions.  *Id.*  Plaintiff is "fair to middling" in remembering to take his medications such as insulin and Metformin to treat diabetes.  Tr. 52.

Plaintiff has pain in the calf of one leg, which causes him to lose his balance.  Tr. 53.  He is able to walk ½ mile before needing to rest, to carry 30-40 lbs. only for short distances, to stand for up to five minutes, to sit for "a couple of hours usually, and to lift up to 20 lbs. for one-third of a work-day." Tr. 57.

Plaintiff sees a VA psychologist every other week and receives regular, ongoing treatment for diabetes.  Tr. 62.

VE Richard Keogh testified Plaintiff's past relevant work included Injection Molding Machine Operator, which is a skilled, medium-exertion job that Plaintiff performed at a heavy-exertion level, and truck driver, forklift operator, and bark-truck driver, which are semi-skilled medium-exertion jobs that Plaintiff also performed at a heavy-exertion level.  Tr. 65-66.

The VE testified Plaintiff would be unable to perform any of his past truck-driving jobs in the manner in which he previously performed them.  Tr. 66.

The VE also testified if Plaintiff is unable to perform job tasks or functions on a regular, reliable, and sustainable schedule or if he misses two days of work a month, he would be unable to engage in any substantial gainful activity.  Tr. 71.

### **STANDARDS**

The initial burden of proof is on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, a claimant must prove his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841  (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means more than a mere scintilla, but less than a

preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility and resolving conflicts and ambiguities in the medical evidence. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Robbins,* 466 F.3d at 882. The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## **DISABILITY ANALYSIS**

### **The Regulatory Sequential Evaluation**

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 404.1521. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the

7 - OPINION AND ORDER

Commissioner determines the claimant is engaged in substantial gainful activity. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See* 20 C.F.R. § 404.1521.

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.1521(a)(4(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the Listed Impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Stout*, 454 F.3d at 1052. The criteria for Listed Impairments are enumerated in 20 C.F.R. part 404, subpart P, appendix 1. *See also* 20 C.F.R. § 404.1520(d).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 404.1520(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Smolen v. Chater*, 80 F.3d 1273, 1284

8  - OPINION AND ORDER

n.7 (9th Cir. 1996).  Assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(v).

Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).

## **THE ALJ'S FINDINGS**

In Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since May 15, 2006, the alleged onset date of his disability.  Tr. 17.

In Step Two, the ALJ found Plaintiff has at all material times had severe impairments of depression, Attention Deficit Disorder (ADD), diabetes, and obesity.  Tr. 17.

In Step Three, the ALJ found Plaintiff's impairments do not meet or equal any listed impairment.  The ALJ, however, found Plaintiff had the RFC to perform less than the full range of medium work for the period from May 15, 2006, through July 1, 2008.  He was limited to unskilled work.  Although he was capable of engaging in brief social interactions in the workplace, he worked best alone rather than as part of a team.  Accordingly, the ALJ found Plaintiff should have little contact with the public.  In light of these findings, the ALJ concluded Plaintiff was "unable to sustain normal persistence and pace of full time employment" during the relevant period.  Tr. 19.

At Step Four, the ALJ found there were not any jobs existing in the national economy that Plaintiff could have performed from May 15, 2006, through July 1, 2008.  Tr. 21.

The ALJ found Plaintiff's Plaintiff's condition as of July 2, 2008, had improved medically to the extent that he was capable of performing unskilled work in which he worked alone

with little public contact and brief social interaction.  The
ALJ, however, found Plaintiff still did not have the RFC to
perform a full range of medium work or any of his past relevant
work.  As a result, the ALJ concluded Plaintiff was capable of
performing a significant number of jobs that are available in the
national economy.  Tr. 23-27.

Accordingly, the ALJ found Plaintiff's disability ended on
July 1, 2008.  Tr. 27.


## DISCUSSION

The overarching issue is whether the evidentiary record
supports the ALJ's finding that Plaintiff's mental health had
improved sufficiently as of July 2, 2008, to render him capable
of substantial gainful activity, and, therefore, that he was not
disabled nor entitled to benefits as of that date.

Plaintiff contends the ALJ erred by (1) failing to credit
Plaintiff's testimony as to the intensity, persistence, and
limiting effects of his mental-health symptoms, and his desire to
work and (2) failing to give sufficient weight to the medical
opinion of Plaintiff's mental-health provider, Douglas Park,
Ph.D., which resulted in an inadequate assessment of Plaintiff's
RFC.

## I.   **Plaintiff's Credibility.**

The ALJ found Plaintiff's testimony regarding the intensity,

persistence, and limiting effects of his mental health symptoms
after July 1, 2008, is not credible because VA "[t]reatment
records indicate that by June 2008 [Plaintiff's] mental health
began to improve." Tr. 24.  The ALJ relied on medical records
reflecting Plaintiff's mental-health treatment by Dr. Park and
Plaintiff's expressed concern over seeking employment because of
the adverse impact that it could have on any disability claim he
might make.

    Plaintiff, however, contends he presented objective medical
evidence that his impairments related to depression and ADD could
reasonably be expected to produce the symptoms to which he
testified and that the ALJ did not give clear and convincing
reasons for rejecting Plaintiff's credibility as to the severity
of those impairments.

**A.  <u>Standards</u>.**

    In *Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986), the
Ninth Circuit established two requirements for a claimant to
present credible symptom testimony:  The claimant must produce
objective medical evidence of an impairment or impairments, and
he must show the impairment or combination of impairments could
reasonably be expected to produce some degree of symptom.  The
claimant, however, need not produce objective medical evidence of
the actual symptoms or their severity.  *Smolen,* 80 F.3d at 1284.
If the claimant satisfies the above test and there is not any

affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester,* 81 F.3d at 834)).  General assertions that the claimant's testimony is not credible are insufficient. *Id.*  The ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints.  *Parra,* 481 F.3d at 750 (quoting *Lester,* 81 F.3d at 834).

**B.  <u>Analysis</u>**.

The issue is whether the medical record considered as a whole supports the ALJ's finding that Plaintiff's mental health improved after July 1, 2008, so as to enable him to return to work that would be substantial gainful activity.

In April 2006 at the Portland VA Medical Center, Plaintiff reported he almost got fired from his job "for stinking and doing bad paperwork."  He was found to be "psychiatrically stable but functionally impaired."  Tr. 497.  Plaintiff received ongoing mental-health treatment through the VA until the end of 2009 primarily in White City, Oregon.

In June 2006 Plaintiff reported he lost his truck-driving job after hitting the company-owner's vehicle in the parking lot.  His mood, however, was fair without any despondency.  He was diagnosed with Major Depressive Disorder associated with

13 - OPINION AND ORDER

chronic, unresolved grief.  Tr. 487.

In October 2006 "[Plaintiff's] behavior, comprehension, coherence of response, and emotional reaction" were normal "with no signs of tension that would have an adverse effect on social or occupational functioning."  Tr. 1088.  Nevertheless, it was "apparent from his comments" that he had workplace problems in the past and that he had been "fired from his last three jobs after only one to three weeks."  Tr. 1088.

In November 2006 Plaintiff was diagnosed with dysthymia and anxiety disorder NOS.  His GAF score was 50 (serious impairment in social, occupational, or school functioning).  The VA issued a decision that Plaintiff was entitled to a "non-service-connected" pension based on those diagnoses.  Tr. 722-726.

In July 2007 Plaintiff was suffering from stress and having difficulty abiding by rules.  Tr. 1083.  His room was "extremely messy," and  he was "red-faced, tremulous, and spoke with clenched teeth."  Tr. 1064.  He reported he was experiencing anger-control issues caused by anxiety, which were "exacerbated by his perceived injustice."  Tr. 1072, 1083.

In September 2007 Plaintiff was depressed and was having difficulty sleeping.  He had not been checking his blood-sugar levels.  Tr. 1151.  At that time Dr. Park began treating Plaintiff on a regular basis.

By October 2007, however, Plaintiff's demeanor was pleasant, and he was engaged and cooperative.  He was "smart and very honest about his beliefs and ideas."  Tr. 1135.  He was getting out of his room more often, but had ongoing friction in his relationship with his sister.  Tr. 1134.  His hygiene and grooming had improved.  Tr. 1132.

In November and December 2007 Plaintiff's clothes, as was often the case, were not clean, and he "presented with somewhat paranoid thoughts."  He was, however, "candid, cooperative, and friendly" and stated he was "making slow, steady steps towards a life worth living."  Tr. 1123.

In late December 2007 Plaintiff reported he had handled the holiday period "pretty well," and even though he had "periodic thoughts of suicide," it "was not an active process." Tr. 1120.

In February 2008 Plaintiff was in good spirits and his hygiene was "quite good" although his thought process was "scattered."  Tr. 1109.

From March to May 2008, Plaintiff's hygiene had improved, and even though he was distressed on occasion, he denied any suicide ideation.  His spirits were more upbeat in spite of the continuing friction with his sister.  Tr. 1203-08.

In June 2008 Plaintiff was still having difficulty taking medications, but he was trying to take them more regularly.  He

15 - OPINION AND ORDER

still had occasional thoughts of suicide, but he did not dwell on them and was doing "what he needs to do to survive."  Tr. 1198. Dr. Park suggested Plaintiff undertake a volunteer position with the VA, but Plaintiff declined because of his concern regarding the impact that would have on his disability claim.

In July 2008 Plaintiff was "quite neat and clean" and his mood and affect were significantly improved.  He was taking his medications "more regularly" and acknowledged "his thinking process" was clearer as a result.  Tr. 1197.  Dr. Park opined:

> It appears that the combination of regular medications and adjustment to the new living environment is beginning to help [Plaintiff] climb out of the depressive episode that he has been in for a number of weeks.  Further, he is much more cognitively accessible when he has taken his ADD medication - an observation that [Plaintiff] agrees with.

Tr. 1197.

In August 2008, however, Plaintiff was not interested in going back to work.  Tr. 1176.  He was struggling with the urge to stay in bed and to be isolated, but he was getting out more often.  Tr. 1174.  Nevertheless, his "appearance and hygiene had improved" with "minimal body odor."  He was less anxious and was not "tearful" or "despondent."  *Id.*  Although he was "somewhat more distressed," Plaintiff had "positive plans to continue his 'slow but steady' move forward" and had "no active suicide ideation."  Tr. 1173.

In September 2008, Plaintiff was cleanly dressed with good hygiene, feeling "really good," and working out. Tr. 1163. He rated his mood at 4 on a 1-10 scale and stated he would like to work as a driver, but not alone. Tr. 1162.

At the end of September 2008, however, Plaintiff "did not show up for his individual appointment, there was no answer on his cell phone," and "no voice-message was available." Tr. 1160.

In October 2008, Plaintiff's mood and effect were "fair to middling," his hygiene was good, and he had no suicide ideation. Tr. 1260. He was doing "fairly well" and "engaging in healthy behavior." Tr. 1260. He was more active and able to "maintain a daily schedule" because of his day treatment. Tr. 1258.

In November 2008 Plaintiff was in "generally good spirits." Tr. 1257. He was reacting well to a recent suicide by a resident in the complex where he was living. Tr. 1256.

In December 2008, however, Plaintiff reported he was isolating more and "stressing" over several issues, including those relating to his pending application for disability benefits. Tr. 1254. Dr. Park again diagnosed Plaintiff with major depressive disorder and ADD and agreed to write "a brief statement about this issue from [his] perspective." *Id.*

In January 2009 Plaintiff still "struggled with suicide ideation," but he denied any intent to harm himself. Tr. 1249.

17 - OPINION AND ORDER

In March 2009 Plaintiff was "doing relatively well" despite periods of depression and isolation."  Tr. 1239.

In May 2009 Dr. Park opined that "given the combination of concentration problems, social isolation/discomfort, and depressive mood swings, [Plaintiff] would likely not be able to work at this time."  Tr. 1264.

When he found Plaintiff's mental health had improved sufficiently as of July 2, 2008, to allow him to engage in substantial gainful activity, the ALJ relied on Dr. Park's treatment note from June 2008 that reflected Plaintiff's mental health had begun to improve to the extent that Dr. Park suggested Plaintiff take a volunteer position with the VA.  Tr. 22.  The ALJ, however, rejected Dr. Park's May 2009 opinion that Plaintiff was unable to work because it was inconsistent with the improvement in Plaintiff's mental health noted by Dr. Park the year before.

The Court concludes this purported inconsistency was not a sufficient reason for the ALJ to discount Dr. Park's opinion. There is nothing in the record that indicates the nature of the volunteer position referred to by Dr. Park was or might have been equivalent to a paying job involving substantial gainful activity.  Moreover, the ALJ did not take into consideration the medical evidence regarding Plaintiff's significant mood swings,

abrupt disappearances, and apparent cessation of treatment that is reflected in medical records during the months after July 2008.

On this record, therefore, the Court concludes the ALJ erred by not giving clear and convincing reasons for refusing to credit Dr. Park's opinion in May 2009 that Plaintiff was unable to engage in substantial gainful activity as of July 2, 2008, based on his mental impairments.  The Court also concludes the ALJ's reasoning for not crediting Plaintiff's testimony is similarly undermined by the medical record.


**REMAND**

Having found these errors, the Court must determine whether this matter must be remanded to the Commissioner for further proceedings or for calculation and payment of benefits.

The decision whether to remand for further proceedings or for the immediate payment of benefits generally turns on the likely utility of further proceedings.  *Id.* at 1179.  The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose."  *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate

award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172,
1178 (9th Cir. 2000). The court should grant an immediate award
of benefits when

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.* The second and third prongs of the test often merge into a
single question: Whether the ALJ would have to award benefits
if the case were remanded for further proceedings. *Id.* at 1178
n.2.

In this matter, the Court concludes no useful purpose
would be served by a remand for further proceedings because all
of the relevant, contemporaneous medical evidence has been
compiled in the Administrative Record and Plaintiff's testimony
and Dr. Park's medical opinion as to the severity of Plaintiff's
impairments establish that Plaintiff continued to be disabled
and, therefore, entitled to DIB after July 1, 2008.


## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the
Commissioner and **REMANDS** this matter pursuant to sentence four
of 42 U.S.C. § 405(g) for the immediate payment to Plaintiff

20 - OPINION AND ORDER

of benefits that have accrued from July 2, 2008, to the present and the continuing payment of benefits hereafter.

IT IS SO ORDERED.

DATED this 25th day of June, 2012.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge